UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIESTA VILLAGE MARKET, LLC,
JOSEPH L. CHESS and TERRY FOWLER,

    Plaintiffs,                               CIVIL ACTION NO. 06-CV-13041

v.                                       HONORABLE DENISE PAGE HOOD

JENNIFER GRANHOLM, MICHAEL COX,

    Defendants.
_____/

**MEMORANDUM OPINION AND ORDER RE:
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT,
DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT,
MOTION TO STRIKE SUPPLEMENTAL BRIEF, and
DEFENDANTS' JOINT MOTION FOR RECONSIDERATION**

**I.    BACKGROUND**

This matter is before the Court on both Plaintiffs Siesta Village Market, L.L.C, Joseph Chess and Terry Fowler's Motion for Summary Judgment and the Joint Motion for Summary Judgment filed by Defendant Jennifer Granholm, Michael Cox, Chairperson Nida Samona (the "State") and Intervening Defendants Michigan Beer and Wine Wholesalers Association. Both sides filed a series of responses and replies to the Summary Judgment Motions. A hearing on the matter was held on September 28, 2007. On October 12, 2007, the Court entered an Order denying Defendants' Motion to Dismiss filed September 7 and October 2, 2006. On October 21, 2007, Defendants filed a Motion for Reconsideration of the Court's October 12, 2007 Order.

## II. FACTS

Plaintiff Siesta Village Market, LLC ("Siesta Village") is a Florida-based retailer of alcoholic beverages. Plaintiffs Joseph L. Chess and Terry Fowler are both Michigan residents who claim they have not been able to obtain their choice of wine from Michigan retailers, either because the retailer has run out of a particular type of wine or does not carry the particular brand. (Plaintiffs' Mot. for Summary Judgment at 8, 9.) Plaintiffs claim that Michigan laws prohibiting out-of-state retailers from shipping directly to Michigan consumers, unless they maintain a location in the state and become part of Michigan's three-tier system for distributing wine, violates the Commerce Clause and goes against the Supreme Court's recent decision regarding some of the same Michigan laws in *Granholm v. Heald*, 544 U.S. 460 (2005).

Michigan has a three-tier system for regulating the sale of wine. The first tier is made up of wineries that are the producers and suppliers of wine. (Defendants' Mot. for Summary Judgment at 11.) Both in-state and out-of-state wineries sell their products only to licensed in-state wholesalers. M.C.L.A. §§436.1305, 436.1403. Michigan wholesalers sell these alcoholic beverages to Michigan retailers who in turn sell to consumers through means including direct shipment. M.C.L.A. §§436.1113(7), 436.1607(1), 436.1111(5), 436.1203(2)-(4). An exception in the three-tier system allows in-state wineries to ship directly to consumers, sidestepping the three-tier system. M.C.L.A. §436.1113(9). In *Heald*, the Supreme Court held that it was discriminatory for the State to only allow in-state wineries the option to ship directly to consumers and mandated that out-of-state wineries must also be allowed to ship directly to consumers, and sidestep the three-tier system. *Heald*, 544 U.S. at 493.

While *Heald* addressed the first level of alcohol distributors, the current case deals with the

third tier in the system–the retailers. Michigan retailers can sell to consumers for off-premises consumption once they are licensed as a "specially designated merchant" or "SDM." M.C.L.A. §436.1537(1)(d). This license also allows Michigan retailers to ship wine directly to consumers. M.C.L.A. §436.1111(7). Out-of-state retailers have the option of obtaining an SDM license, but only if they open a location in Michigan and become part of the three-tier system, obtaining their wine only from licensed Michigan wholesalers. M.C.L.A. §§436.1203, 436.1901. Essentially, this means that maintaining a physical presence in Michigan is the only way for out-of-state retailers to gain direct access to Michigan consumers. Plaintiffs claim that this differential treatment violates the Commerce Clause. (Plaintiffs' Mot. for Summary Judgment at 5.)

The State argues in its Motion for Summary Judgment that the three-tier system is legitimate under *Heald* and allowing out-of-state retailers to sidestep the three-tier system and ship directly to Michigan consumers would interfere with the state's interest in regulating the sale of alcohol under the Twenty First Amendment of the United States Constitution. (Defendants' Mot. for Summary Judgment at 1.) The State asserts that the three-tier system allows it to more effectively oversee the sale of alcohol by making certain, among other things, that all taxes are collected and accounted for, underage drinking laws are complied with, and labeling laws are enforced. (Defendants' Mot. for Summary Judgment at 5, 6.) The State also claims that the current system of wine distribution allows it to conduct random on-site inspections of wholesalers to ensure that the wine they are selling to retailers complies with laws before it hits the market and is available to Michigan consumers. *Id.*

### III. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party

3

demonstrates that there is no genuine issue as to any material fact. This means that the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.,* 773 F.2d 62 (6th Cir. 1985). To avoid a summary judgment motion, the non-moving party must show some evidence of a disputed fact. *Anderson,* 477 U.S. at 249-50 (citations omitted). The non-moving party fails to show a genuine issue of material fact if it cannot establish the existence of an element essential to that party's case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). In other words, the non-movant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun,* 828 F.Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.,* 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d 1319 (6th Cir. 1983).

IV. **APPLICABLE LAW & ANALYSIS**

    A. **The Twenty First Amendment**

The Commerce Clause "encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." *Healy v. The Beer Institute Inc.,* 491 U.S. 324, 326 n. 1 (1989) (citations omitted). Defendants claim that the Twenty First Amendment protects their right to enact legislation regulating alcohol that comes into the State. (Defendants' Mot. for Summary Judgment at 23.) The portion of the Twenty First Amendment that Defendants rely on states that "the transportation or importation into any State ... for delivery or use therein of

intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. Amend. XXI, §2. The Supreme Court has held that this section of the Twenty First Amendment does not give states "the authority to pass non-uniform laws in order to discriminate against out-of-state goods." *Heald,* 544 U.S. at 484-85. In fact, a state's authority under the Amendment does not abrogate Congress' Commerce Clause power and liquor regulations cannot escape Commerce Clause scrutiny. *Id.* at 487.

Based on this analysis, the State's argument that the Twenty First Amendment gives it the authority to regulate alcohol coming into the state and that the three-tier system it has designed for regulatory purposes is appropriate is flawed. While the *Heald* court did state that the three-tier system was an appropriate use of state power, it did not approve of a system that discriminates against out-of-state interests. The Supreme Court made clear in *Heald* that a state's power under the Twenty First Amendment is not above the Commerce Clause nondiscrimination requirement. In the present case, in-state retailers gain the privilege of shipping directly to Michigan consumers simply upon obtaining an SDM license. Out-of-state retailers, on the other hand, only have access to Michigan consumers if they open a location in Michigan, become part of the three-tier system, and obtain an SDM license. State regulations such as this are not authorized by the Twenty First Amendment if the regulations create an extra burden on out-of-state wine retailers because the Commerce Clause is implicated. Defendant's Twenty First Amendment argument, alone, without an analysis of whether the Commerce Clause is implicated, has been rejected by the Supreme Court in *Heald*.

**B.    Commerce Clause**

Since the Twenty First Amendment alone does not necessarily protect the State's actions

5

here, a dormant Commerce Clause analysis is necessary to determine the nature and validity of the statutes in question. Under a dormant Commerce Clause analysis, state laws violate the Commerce Clause if they mandate "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon*, 511 U.S. 93, 99 (1994). Differential treatment has been struck down as violative of the Commerce Clause in instances where it creates a higher overhead cost for doing business in a particular state for out-of-state businesses than for in-state businesses, *Heald,* 544 U.S. at 460, or imposes a tax on out-of-state alcohol producers that in-state producers have the option of avoiding. *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263 (1984). The Supreme Court also views with "particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 145 (1970). Statutes that require an entity to maintain residency in the home state "in order to compete on equal terms" with in-state businesses violate the Commerce Clause. *Heald,* 544 U.S. at 475 (quoting *Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 72 (1963)).

Plaintiffs have shown that Michigan's ban on direct shipments of wine from out-of-state retailers to consumers discriminates against out-of-state interests. Michigan retailers have the option of obtaining an SDM license that allows them to sell and ship wine directly to consumers, benefitting their business by allowing them access to more customers. The only way for an out-of-state retailer to obtain such a license and ship directly to consumers in Michigan is to maintain a location in the state. This requirement is burdensome on out-of-state retailers because there are many costs associated with opening a new location in Michigan that may not be viable for retailers like Siesta Village. As noted in *Heald*, the expense of establishing a bricks-and-mortar operation

6

in one state, let alone in all 50 states, is prohibitive. 544 U.S. at 474-75. In-state retailers, on the other hand, have open access to the Michigan market at no additional cost. Under a Commerce Clause analysis, the added burden of opening a new location in Michigan is differential and discriminatory treatment of out-of-state interests.

The State points out in its Motion for Summary Judgment that hundreds of out-of-state retailers have complied with the SDM licensing requirements and opened a location in Michigan in order to gain access to Michigan consumers through direct shipment. (Defendants' Mot. for Summary Judgment at 33.) The New York statute that the *Heald* court considered involved a similar issue where New York allowed out-of-state wineries to sell directly to New York consumers if they maintained a location in the state. The State argues that the New York statute's requirement that out-of-state wineries establish a New York location was struck down in *Heald* because it was clearly burdensome as evidenced by the fact that not one out-of-state winery had availed itself of the option to open an in-state location and sell directly to New York consumers. *Id.* The State argues that, in the present case, there is no burden on out-of-state retailers because many of them have chosen to open a Michigan location and do business with Michigan consumers. *Id.*

The Defendants' argument has no bearing on the fact that out-of-state retailers will still face a great obstacle in gaining access to Michigan consumers if they must first establish a location in the State. The fact that it may be harder for wineries than for retailers to open a new location, as Defendants suggest in their Summary Judgment Motion, is irrelevant because what is required to prove that a statute is discriminatory is that a burden is created on out-of-state interests. That burden exists on out-of-state *retailers* here, even if the burden may be less than that imposed upon out-of-state wineries when they are required to open a location in a state in order to do business in that

particular state.

## C. Legitimate Local Purpose

Even though the Michigan statutes are discriminatory, states have a chance to save such statutes from invalidation by proving that the law serves a legitimate local purpose and that the purpose cannot be adequately served by reasonable nondiscriminatory means. *Maine v. Taylor*, 477 U.S. 131, 140-143 (1983); *New Energy Co. of Indiana v. Limbach,* 486 U.S. 269, 278 (1988). The state has the burden of proving through "concrete record evidence" that nondiscriminatory means are unworkable, *Heald,* 544 U.S. at 493, and the burden of making a *clear showing* that the discrimination is justified, *C & A Carbone*, *Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 393 (1994) (emphasis added). State regulations that discriminate against interstate commerce should not be upheld on "mere speculation" that the discrimination is warranted. *Heald,* 544 U.S. at 492.

In *Maine v. Taylor*, the Supreme Court upheld a discriminatory provision banning importation of live baitfish into the state because the defense was able to prove through expert testimony that the imported baitfish introduced parasites into the Maine baitfish population that otherwise did not exist in the state. *Taylor,* 477 U.S. at 141-42. Maine also made a clear showing that alternatives to an outright ban were impossible. Experts testified that inspection of the fish for parasites would require destroying the fish; statistical sampling and inspection techniques for other fish had not yet been developed for baitfish; and that the "small size of baitfish and the large quantities in which they are shipped made inspection for comingled species a 'physical impossibility.'" *Id.* On the other hand, in *Heald,* the Supreme Court ruled against discriminatory statutes in Michigan and New York because the states "provide[d] little concrete evidence for the sweeping assertion that they cannot police direct shipment by out of-state-wineries. *Heald,* 544 U.S.

8

at 492.

*Heald* was a case in which Michigan and New York defended statutes that allowed in-state wineries to ship directly to consumers but did not allow out-of-state wineries to do the same. The *Heald* Court found that the statutes were discriminatory in nature because they made it more expensive for out-of-state wineries to do business in either state. *Id.* at 474-75. Michigan's statute required out-of-state wineries to go through wholesalers and retailers in order to sell to Michigan consumers, thus increasing their overhead costs. *Id.* New York's statute required out-of-state wineries to establish an office in the state in order to sell to New York consumers, also increasing the cost of doing business in the state. *Id.* The Supreme Court was not persuaded that this discrimination against out-of-state wineries served legitimate local purposes like tax collection and preventing the sale of alcohol to minors because the states were unable to prove that these purposes could not be satisfied through nondiscriminatory means or that they were even legitimate purposes at all. *Id.* at 492. The Supreme Court opined that direct shipments from out-of-state wineries could be policed by requiring a simple license or by using technology to conduct checks on out-of-state wineries. *Id.*

In the present case, the State does not meet its burden of showing, through "clear record evidence," that alternatives to an outright ban on wine shipments from out-of-state retailers are unworkable. The State does not suggest any alternatives for regulating wine from out-of-state retailers nor make any showing that such an alternative is unworkable. The State also entertains no discussion about how it regulates wine shipped directly from out-of-state *wineries* and why the same procedures would be unworkable in regulating shipments from out-of-state *retailers*. The State puts forth most of the same "sweeping assertions" that were rejected in *Heald* as its justification for

9

discriminating against out-of-state retailers. The State offers three main arguments for why its statute rightfully mandates out-of-state retailers to establish a Michigan location:

> 1) Out-of-state retailers will side-step Michigan's three-tier system, thereby avoiding the "funnel" of Michigan wholesalers that the State uses to regulate things like taxes and labeling laws for in-state retailers. Out-of-state retailers will obtain wine from non-Michigan wholesalers and the State will not be able to stop tax evasion or enforce labeling laws.
>
> 2) The State cannot physically inspect, conduct string operations, or randomly visit out-of-state retailers who do not have a Michigan location and this will make underage drinking laws, general Michigan laws, and anti-tied-house vertical integration laws unenforceable.
>
> 3) The State relies on 44 Liquor Control Commission officers and local law enforcement agencies to regulate wine in the state and these officers cannot regulate the hundreds of thousands of nation-wide retailers that may be interested in shipping to Michigan.

(Defendants' Mot. for Summary Judgment at 5, 6, 18). While these justifications may show that the discriminatory statutes in question "serve a legitimate local purpose," they do not prove that alternatives to an outright ban on shipments from out-of-state retailers are unworkable.

The State's first justification for discriminating against out-of-state retailers focuses on the benefits of Michigan wholesalers–the second tier in the three-tier system. The State claims that requiring all Michigan retailers to purchase wine only from Michigan wholesalers makes it easier to enforce tax laws and wine labeling laws because the State is constantly checking on Michigan wholesalers to make sure they are complying with state law. Out-of-state retailers like Siesta Village purchase their wine from non-Michigan retailers. Consequently, when they sell it to Michigan consumers, the State will not be able to regulate these sales because they will not go through the important "funnel" of Michigan wholesalers. The State claims that having all retailers who sell in Michigan go through the wholesalers "funnel" is essential because it allows the State to

10

"cross check records between each of the three tiers to ensure that all taxes are being paid by the parties responsible for that tax (i.e., supplies pay excise tax and retailers collect and remit the sales tax.)" *Id.* at 13. This is critical to preventing tax evasion, according to the State. The State makes no showing as to why this objective cannot be satisfied through nondiscriminatory means or how it manages to deter out-of-state wineries, who do not go through the "funnel" of Michigan wholesalers, from evading taxes when they ship directly to Michigan consumers.

The State raised the same concern of tax evasion in *Heald* and the Supreme Court rejected it stating that imposing licensing requirements that include self-reporting and regular submission of sales reports was sufficient to meet the State's objectives of preventing tax evasion. *Heald,* 544 U.S. at 491-92. The Supreme Court also pointed out that various states use this approach of self-reporting when dealing with interstate shipments and do not report problems with tax collection and that licensing and self-reporting are the methods sanctioned by the National Conference of State Legislatures in their Model Direct Shipping Bill. *Id.* The State offers no counter-argument as to why these methods would not work to prevent out-of-state retailers from evading taxes.

The State's similar concerns that they will not be able to enforce labeling laws if retailers who purchase their wine from non-Michigan wholesalers sell to Michigan consumers fails because the State does not show that an alternative to regulating labeling laws is unworkable. A discriminatory law cannot be upheld simply because the State speculates that it may have trouble regulating wine from out-of-state retailers without setting forth concrete proof that this will be the case.

The State also expresses concern that allowing out-of-state retailers to ship directly to Michigan consumers, when they obtain their wine from wholesalers other than Michigan's, will hurt

11

the State's economy.  "Since it is [Michigan] wine and beer suppliers (not retailers) who are responsible for paying excise taxes under Michigan law, Michigan would lose the excise taxes for all wines (and beer) sold by out-of-state retailers to Michigan residents" because they would have purchased their supply from a non-Michigan wholesaler or producer. (Defendants' Mot. for Summary Judgment at 20.)

This argument is flawed because it essentially asks the Court to uphold a discriminatory statute for protectionist purposes–the exact reason the dormant Commerce Clause prohibits such statutes.  *See Philadelphia v. New Jersey,* 437 U.S. 617 (1978).  The State claims that it collected $51,000,000 in tax revenue from Michigan suppliers and producers in fiscal year 2005-2006 and it would lose this valuable source of revenue if out-of-state retailers entered the picture. (Defendants' Mot. for Summary Judgment at 20.)  "Shielding in-state industries from out-of-state competition is almost never a legitimate local purpose, and state laws that amount to 'simple economic protectionism' consequently have been subject to a 'virtually per se rule of invalidity.'" *Taylor,* 477 U.S. at 148. (citations omitted).  The State claims that tax revenue would be lost if out-of-state retailers were allowed to ship directly to consumers fails because it is not a legitimate reason to uphold a discriminatory statute under well-established Commerce Clause law.

In summary, the State's argument emphasizing the importance of requiring all retailers selling in Michigan to purchase their wine from Michigan wholesalers fails on the tax-evasion and labeling law grounds because no alternative is discussed or proved to be unworkable and on the tax-collection argument because it advances pure protectionism.

The second argument the State sets forth in an attempt to save its statute from invalidation focuses on the importance of having a location in the state of Michigan for regulatory purposes.  The

State argues that if out-of-state retailers are allowed to ship directly to Michigan consumers without maintaining an in-state location, the State will not be able to show up unannounced to the retailer's locations and check for compliance with underage drinking laws or anti-tied-house vertical integration laws. The State expresses special concern for the fact that out-of-state retailers may sell to underage drinkers and the State will not be able to effectively stop them from doing so because they cannot conduct sting operations. (Defendants' Mot. for Summary Judgment at 19). There is no explanation offered as to why the same requirement of having an adult signature when ordering wine cannot be imposed on out-of-state retailers. There is also no explanation offered as to how Michigan regulates the labeling and packaging of wine shipped directly from out-of-state *wineries* that may appeal to underage drinkers and why that method would not be effective in regulating wine shipped directly from out-of-state retailers like Siesta Village.

Lastly, the State focuses on the fact that allowing out-of-state retailers to ship to Michigan consumers without requiring them to establish a location in the state will open the door to thousands of retailers who to want to sell to Michigan consumers and the State will not be able to regulate the retailers with the current number of Commission inspectors it currently retains. (Defendants' Mot. for Summary Judgment at 18.) It also puts forth the argument that it will not be able to rely on other states' local law enforcement to help regulate the sale of alcohol the way it is able to in Michigan. *Id.* While again the State makes a legitimate point here that it needs to regulate sales of wine coming into its borders, it does not clearly describe why an increased number of retailers selling to Michigan cannot be regulated by alternative means. If the State explained why alternatives to an outright ban on out-of-state shipments were unworkable or entertained a discussion about their experience regulating out-of-state *wineries* and why those same methods would not work for out-of-

13

state *retailers*, they may have been able to meet their burden in showing that non-discriminatory alternatives are unworkable. The State only speculates that it will not be able to regulate these out-of-state retailers without showing clear proof as to why other means of regulating them are unworkable. The State makes the same "sweeping assertions" here as it made in *Heald* for why it would not be able to regulate out-of-state wineries and those justifications were struck down by the Supreme Court.

This is the second time the State of Michigan has had a chance to defend some of the same statutes that discriminate against out-of-state interests. The State lost the first time at the Supreme Court level because they offered no proof that non-discriminatory alternatives were unworkable and discriminatory measures were necessary to meet a legitimate local purpose. The Supreme Court even suggested some alternatives the State might try before deciding that it would not be able to regulate out-of-state wineries, stating:

> Michigan and New York offer a handful of other rationales, such as facilitating orderly market conditions, protecting public health and safety, and ensuring regulatory accountability. These objectives can also be achieved through the alternative of an evenhanded licensing requirement. FTC Report 40-41.[1] Finally, it should be noted that improvements in technology have eased the burden of monitoring out-of-state wineries. Background checks can be done electronically. Financial records and sales data can be mailed, faxed, or submitted via e-mail.
>
> In summary, the States provide little concrete evidence for the sweeping assertion that they cannot police direct shipments by out-of-state wineries. Our Commerce Clause cases demand more than mere speculation to support discrimination against out-of-state goods. The "burden is on the State to show that 'the discrimination is demonstrably justified,'" *Chemical Waste Management*, *Inc. v. Hunt*, 504 U.S. 334, 344 (1992) (emphasis in original). The Court has upheld state regulations that discriminate against interstate commerce only after finding, based on concrete record evidence, that a State's nondiscriminatory alternatives will prove unworkable. *See, e.g., Maine v. Taylor*, 477 U.S. 131, 141-144, 106 S.Ct. 2440, 91

---

[1] FTC Report, Possible Anticompetitive Barriers to E-Commerce: Wine (2003)

L.Ed.2d 110 (1986). Michigan and New York have not satisfied this exacting standard.

*Heald,* 544 U.S. 492-93. In a similar action brought by Siesta Village and others in Texas, the court held that the Texas Code banning out-of-state wine retailers from selling or shipping wine to Texas consumers violated the Commerce Clause. *See Siesta Village Market, LLC v. Perry,* 530 F.Supp.2d 848 (N.D. Tex. 2008). The State does not put forth any new argument as to why non-discriminatory alternatives will not work in regulating out-of-state shipments. The State fails to meet the standard for validating the statute.

## V. MOTION FOR RECONSIDERATION

Defendants seek reconsideration of the Court's October 12, 2007 Order denying Defendants' Motion to Dismiss. For the reasons set forth above, the Court denies Defendants' motion for reconsideration.

## VI. CONCLUSION

Accordingly,

IT IS ORDERED that Plaintiff Siesta Village's Motion for Summary Judgment is **[Dkt. #38, filed July 30, 2007]** is **GRANTED**.

IT IS FURTHER ORDERED that Defendants Governor Jennifer Granholm and Michigan Wine & Beer Wholesalers Association's Motion for Summary Judgment **[Dkt. #39, filed July 31, 2007]** is **DENIED**.

IT IS FURTHER ORDERED that Plaintiff Siesta Village's Motion to Strike Supplemental Brief **[Dkt. #49, filed Oct. 2, 2007]** submitted by Defendants is **DENIED**.

IT IS FURTHER ORDERED that Defendants Governor Jennifer Granholm and Michigan Wine & Beer Wholesalers Association's Motion for Reconsideration **[Dkt. #53, filed Oct. 26, 2007]**

regarding this Court's Order Denying Defendant's Motion to Dismiss is **DENIED**.

IT IS FURTHER DECLARED that the statutes and regulations prohibiting out-of-state retailers from selling, delivering and shipping wine through interstate commerce directly to Michigan consumers is unconstitutional under the Commerce Clause.

IT IS FURTHER ORDERED that the State of Michigan and its officials are enjoined from prohibiting out-of-state wine retailers from selling, delivering and shipping wine through interstate commerce direct to consumers. The State of Michigan and its officials are enjoined from enforcing any provisions under M.C.L.A. §§ 436.1201(1), 436.1203, 436.1901 and 436.1547 which prohibits out-of-state wine retailers from selling, delivering and shipping wine through interstate commerce directly to consumers in Michigan. The State of Michigan may continue to collect any tax due on the sale of the wine and may continue to require licenses and permits for direct interstate sales and deliveries, so long as these provisions do not discriminate against out-of-state wine retailers.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: September 30, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2008, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager